1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DAVID COOPER,                              No.  2:13-cv-1693 CKD

12                 Plaintiff,

13        v.                                    ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
                  Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title

20   XVI of the Social Security Act ("Act").  For the reasons discussed below, the court will deny

21   plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for

22   summary judgment.

23   BACKGROUND

24        Plaintiff, born on June 3, 1966, applied on June 18, 2010 for SSI, alleging disability

25   beginning October 1, 1999.  Administrative Transcript ("AT") 104-110, 125.  Plaintiff alleged he

26   was unable to work due to paranoid schizophrenia, bipolar disorder, degenerative disc disease,

27   /////

28   /////

                                              1

and hepatitis C.  AT 129.  In a decision dated June 1, 2012, the ALJ determined that plaintiff was

not disabled.[1]  AT 9-18.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.   The claimant has not engaged in substantial gainful activity since June 18, 2010, the application date.
>
> 2.  The claimant has the following severe impairments:  hepatitis C, degenerative disc disease, polysubstance abuse, antisocial personality disorder, and mood disorder.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to

---

[1]     Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?   If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

        The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1    perform medium work as defined [in the regulations] except he can
     remember, follow and carry out simple tasks with adequate
2    concentration, persistence and pace.  He can relate appropriately to
     coworkers, supervisors and the public.  He can adapt to changes in
3    a routine work setting.

4        5.  The claimant has no past relevant work.

5        6.  The claimant was born on June 3, 1966 and was 44 years old,
         which is defined as a younger individual age 18-49, on the date the
6        application was filed.

7        7.  The claimant has a limited education and is able to communicate
         in English.
8
         8.  Transferability of job skills is not an issue because the claimant
9        does not have past relevant work.

10       9.  Considering the claimant's age, education, work experience, and
         residual functional capacity, there are jobs that exist in significant
11       numbers in the national economy that the claimant can perform.

12       10.  The claimant has not been under a disability, as defined in the
         Social Security Act, since June 18, 2010, the date the application
13       was filed.

14   AT 11-18.

15   ISSUES PRESENTED

16       Plaintiff contends the ALJ improperly rejected the opinion of consultative psychologist

17   Dr. Weesner.

18   LEGAL STANDARDS

19       The court reviews the Commissioner's decision to determine whether (1) it is based on

20   proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

21   as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

22   evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

23   F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

24   mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

25   Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

26   responsible for determining credibility, resolving conflicts in medical testimony, and resolving

27   ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

28   "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

                                            3

1   rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

2        The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

3   Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

4   conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not

5   affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see

6   also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the

7   administrative findings, or if there is conflicting evidence supporting a finding of either disability

8   or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

9   1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

10   weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

11 ANALYSIS

12        Consultative psychologist Dr. Weesner examined plaintiff twice. The first time she

13   examined plaintiff was on November 4, 2010. AT 302-307. At that time, she assessed plaintiff's

14   ability to perform simple and repetitive tasks as fair and plaintiff's ability to perform all other

15   work-related activities as poor. AT 307. Dr. Weesner thereafter filed an addendum to her report

16   in which she stated that she was unaware at the time of performing the examination that plaintiff

17   was under the influence of marijuana. AT 311. The second time Dr. Weesner examined plaintiff,

18   on May 5, 2011, she upgraded to "fair" his ability to complete detailed and complex tasks, the

19   ability to accept instructions from a supervisor, and the ability to maintain regular attendance in

20   the work. AT 364-371. She concluded the remaining areas of work related abilities were still

21   poor at the time of the second examination. AT 370. Plaintiff contends that the ALJ improperly

22   rejected these opinions.

23        The weight given to medical opinions depends in part on whether they are proffered by

24   treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

25   1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a

26   greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80

27   F.3d 1273, 1285 (9th Cir. 1996).

28   /////

1    To evaluate whether an ALJ properly rejected a medical opinion, in addition to

2  considering its source, the court considers whether (1) contradictory opinions are in the record,

3  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

4  treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

5  F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

6  rejected for "specific and legitimate" reasons that are supported by substantial evidence.  Id. at

7  830.  While a treating professional's opinion generally is accorded superior weight, if it is

8  contradicted by a supported examining professional's opinion (e.g., supported by different

9  independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala , 53 F.3d

10  1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In

11  any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

12  findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory,

13  minimally supported opinion rejected); see also Magallanes , 881 F.2d at 751.  The opinion of a

14  non-examining professional, without other evidence, is insufficient to reject the opinion of a

15  treating or examining professional.  Lester, 81 F.3d at 831.

16    The ALJ accorded little weight to the opinion of Dr. Weesner rendered after the first

17  examination because plaintiff engaged in substance abuse at the time of the evaluation and

18  because Dr. Weesner noted that plaintiff  "did not appear to respond to questions in an honest and

19  open manner."  AT 17, 306, 311.  The ALJ concluded these factors seriously undermined the

20  validity of the examination findings.  AT 17.  The ALJ also noted that both opinions rendered by

21  Dr. Weesner were inconsistent with her own findings in which she found plaintiff had intact

22  social functioning and was cooperative and pleasant.  AT 306, 367, 369.  The ALJ also

23  discounted Dr. Weesner's assessments that plaintiff had poor work related abilities due to mental

24  impairment because Dr. Weesner assessed relatively high Global Assessment of Functioning

25  scores (GAF) of 55 and 68,[2] respectively, indicating plaintiff's condition was mild to moderate.

26  _____

27  [2]  GAF is a scale reflecting the "psychological, social, and occupational functioning on a
hypothetical continuum of mental health-illness."  Diagnostic and Statistical Manual of Mental
Disorders at 34 (4th ed. 2000) ("DSM IV-TR").  A GAF of 51-60 indicates moderate symptoms

28  (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in

1    AT 17, 306, 369.  The ALJ also concluded the extreme limitations assessed by Dr. Weesner were

2    inconsistent with her conclusion after plaintiff's second examination (performed when plaintiff

3    was not engaged in marijuana use) that plaintiff was not suffering from a major mental disorder.

4    AT 17, 369.

5            Plaintiff asserts that the ALJ, in discounting Dr. Weesner's opinions, impermissibly relied

6    on the opinion of another examining psychologist, Dr. Donohue.  Although Dr. Donohue's

7    opinion was rendered two years prior to Dr. Weesner's first examination, the ALJ appropriately

8    assigned great weight to Dr. Donohue's opinion.  Plaintiff alleged disability beginning October 1,

9    1999.  The ALJ recognized that because plaintiff had applied for SSI, disability payments could

10   not be made prior to the month following the month in which the application was filed (June

11   2010).  AT 9.  However, consistent with the regulations, the ALJ appropriately considered

12   plaintiff's complete medical history, which included the consultative examination of Dr.

13   Donohue.  AT 9, 16, 253-256.  Dr. Donohue opined that plaintiff could do simple tasks but would

14   have difficulty with detailed or complex tasks and might have stress in work or work-like

15   situations.[3]  AT 256.  The ALJ accorded significant weight to Dr. Donohue's opinion because it

16   was consistent with the overall medical record and plaintiff's own reported daily activities.  AT

17   16, 35-39 (plaintiff testified to a wide variety of daily activities and engaging in social activities

18   with friends and family), 236 (plaintiff denied having mental health problems in report to treating

19   nurse in June, 2008), 261 (plaintiff reported no history of mental illness in February, 2009), 267

20   (screening at California Department of Corrections in February, 2009 indicated no mental

21   illness), 269 (plaintiff seen by D. Hardcastle, Ph.D. who reported "inmate and myself have no

22   _____

23   social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers).  Id.
     A GAF of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or

24   some difficulty in social, occupational, or school function (e.g., occasional truancy, or theft within
     the household), but generally functioning pretty well, has some meaningful interpersonal

25   relationships.  Id.

26   [3] The ALJ accommodated Dr. Donohue's limitation regarding stress in the assessed residual
     functional capacity by restricting plaintiff to unskilled work.  AT 18; see also 20 C.F.R. § 416.968

27   (unskilled work is defined as "work which needs little or no judgment to do simple duties that can
     be learned on the job in a short period of time"); 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules

28   201.00(I), 202.00(g); SSR 85-15 (unskilled work does not require working with people).

idea why he is here . . . [plaintiff] adamantly states 'I don't need any mental health treatment!'"), 268 (no mental health symptoms while plaintiff was not taking methamphetamines while incarcerated in April 2009), 379-381 (mental status exam in February 2011 indicated mild impairments with some moderate impairments in flow of thought and severe impairments in concentration and memory), 389 (evaluator in March 2011 concluded plaintiff had moderate impairment), 455 (plaintiff reported mental health symptoms stopped once he stopped using drugs; plaintiff diagnosed with generalized anxiety disorder and psychosis secondary to substance abuse).[4]  Viewing the record as a whole, the reasons set forth by the ALJ for according little weight to the opinions of Dr. Weesner are specific and legitimate and supported by substantial evidence.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (ECF No. 12) is denied;

2.  The Commissioner's cross-motion for summary judgment (ECF No. 13) is granted; and

3.  Judgment is entered for the Commissioner.

Dated:  October 28, 2014

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

4 cooper.ss

_____

[4]  The ALJ also assigned "good weight" to the opinion of the consulting state agency psychologist who opined in June, 2011, after reviewing the medical record, that plaintiff's mental impairments were not severe. AT 16, 405.